[No. B110776. Second Dist., Div. Three. Apr. 10, 1998.]

· KATHERINE WEBER et al., Plaintiffs and Appellants, v.
BOARD OF RETIREMENT OF THE LOS ANGELES COUNTY
EMPLOYEES RETIREMENT ASSOCIATION, Defendant and
Respondent.

**[Opinion certified for partial publication.\*]**

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of footnote 6.

## COUNSEL

David B. Bloom, Peter O. Israel and Stephen S. Monroe for Plaintiffs and Appellants.

David L. Muir and Margaret L. Oldendorf for Defendant and Respondent.

## Opinion

### ALDRICH, J.—

#### Introduction

In this appeal, we are asked to determine whether Los Angeles County employees are entitled to interest under Civil Code section 3287, subdivision (a)[1] on the lump-sum portion of their disability retirement benefits which portion was administratively awarded to them by the board of retirement. Petitioners are members of the Los Angeles County Employees Retirement Association (LACERA) who have been granted service-connected disability retirement pensions under the County Employees Retirement Law of 1937, Government Code section 31200 et seq. (CERL). When LACERA denied petitioners' requests for interest on the retroactive portion of their benefits which is paid in a lump sum, petitioners filed this class-action petition for writ of mandate asking the court to order LACERA to pay the interest. LACERA moved for judgment on the pleadings based on the Supreme Court's holding in *American Federation of Labor v. Unemployment Ins. Appeals Bd.* (1996) 13 Cal.4th 1017 [56 Cal.Rptr.2d 109, 920 P.2d 1314] (*AFL-CIO*) arguing that as an administrative body, it has no statutory authority to award interest when paying the retroactive portion of disability benefits and otherwise section 3287(a) provides for the award of prejudgment interest only in judicial as opposed to administrative proceedings. The trial court agreed with LACERA and granted their motion. On appeal, petitioners attempt to distinguish *AFL-CIO*. We hold CERL does not authorize the board, either implicitly or explicitly, to award interest under section 3287(a), and so based on *AFL-CIO* and CERL, judgment was properly entered on the pleadings. Accordingly, we affirm the judgment.

#### Factual and Procedural Background

##### A. *LACERA*.

LACERA is a public entity created under the authority of CERL to hold and invest the pensions and administer the benefits to the employees of the County of Los Angeles who are its members. LACERA's board of retirement (Gov. Code, § 31520 (hereinafter the Board)) is charged with the responsibility of ascertaining the eligibility for and paying pension benefits to eligible employees under CERL.

---

[1] Hereinafter, Civil Code section 3287, subdivision (a) will be referred to as section 3287(a).

B. *Katherine Weber.*

For seven years, Katherine Weber was a mental health hearing referee for the Los Angeles County Superior Court. Weber suffered injuries in an on-duty automobile accident on August 31, 1989, and applied for service-connected disability retirement. LACERA found Weber was not permanently incapacitated and so she filed an administrative appeal. After a hearing, the referee recommended Weber be granted service-connected disability retirement effective immediately, commencing retroactively to the day following the last day she received full compensation.

On March 3, 1993, LACERA's Board voted to adopt the findings of the referee and granted Weber service-connected disability retirement under CERL effective April 10, 1991, and retroactive to August 1989. Weber was paid a lump sum of $48,455.51 to cover the benefits retroactively owed, thereby making the payments current. Weber is also receiving her current monthly allowance. The Board notified Weber of her right, should she disagree with the decision, to file a petition for writ of mandate. Instead, Weber asked the Board to pay her interest on the retroactive lump-sum payment. LACERA denied the request, explaining there was no legal authority for the payment of such interest.

C. *Laura Garnica.*

Laura Garnica was an intermediate typist clerk for the Los Angeles County Sheriff's Department for 13 years. On January 22, 1988, Garnica applied for a service-connected disability and on April 5, 1989, the Board ruled she was permanently incapacitated as the result of a nonservice-connected cause. At Garnica's request, a de novo hearing was held. During the period of reevaluation, Garnica applied for and received nonservice-related payments. After the hearing, the referee recommended a service-connected disability retirement allowance. The Board adopted the referee's findings and granted Garnica disability retirement effective June 3, 1988. Garnica was paid $16,791.37 in retroactive benefits which amount constitutes the difference between the nonservice-connected benefit received during the pendency of the de novo proceeding and the service-connected disability to which she had been entitled as of the date she was initially eligible. Garnica's request for interest on the retroactive benefits was denied by LACERA for lack of legal authority to make such payments.

D. *The mandamus petition.*

Weber and Garnica (petitioners) then filed their class action petition for writ of mandate under Code of Civil Procedure section 1094.6. In paragraph

5 of the first cause of action, petitioners sought to direct the Board to pay them and others similarly situated interest under section 3287(a) on the lump-sum payment of the retroactive portion of the CERL benefits administratively awarded to them.

LACERA answered the petition, specifically denying the allegations of the fifth paragraph. LACERA then filed its motion for judgment on the pleadings, arguing the petition was insufficient as a matter of law based on the authority of *AFL-CIO*. In its motion, LACERA argued CERL does not authorize or compel administrative payment of interest on retroactive retirement allowances. LACERA noted petitioners sought the award of interest under section 3287(a) at the administrative level, whereas section 3287(a) applies to court-ordered awards in mandamus actions upon a determination that benefits were wrongfully withheld.

Petitioners opposed LACERA's motion by distinguishing *AFL-CIO* and the Unemployment Insurance Code on the ground the interest they sought constituted "damages" as defined by section 3287(a).

The trial court granted LACERA's motion for judgment on the pleadings, explaining simply, "<u>AFL-CIO</u> controls." The court also denied leave to amend the petition, stating "[s]hould plaintiffs wish to file a petition in mandate re[:] 'wrongful withholding' of benefits, plaintiffs should file a new action." Judgment was entered in favor of LACERA, and petitioners' timely appeal followed.

## CONTENTION

Petitioners contend the trial court improperly granted the motion for judgment on the pleadings on the authority of *AFL-CIO* because that case does not bar prepayment interest on retirement benefits.

## DISCUSSION

The question of whether petitioners are entitled to interest on the lump-sum payment of the retroactive portion of their retirement benefits "is one of law, concerning which we exercise our independent judgment. . . ." (*Austin v. Board of Retirement* (1989) 209 Cal.App.3d 1528, 1531 [258 Cal.Rptr. 106], citation omitted.)

Section 3287(a) provides in relevant part, "Every person who is entitled to recover *damages* certain, or capable of being made certain by calculation, *and the right to recover which is vested in him upon a particular day*, is

entitled also to recover interest thereon from that day, except during such time as the debtor is prevented by law, or by the act of the creditor from paying the debt. *This section is applicable to recovery of damages and interest from any such debtor, including the state or any county, city, city and county . . . of the state.*" (Italics added.)

■ The question put squarely before us is whether a Los Angeles County employee who is administratively determined to be entitled to disability retirement benefits is also entitled to interest under section 3287(a) on the amount owing to them retroactively, covering the period from the first day of eligibility to the date the Board determines the member is in fact eligible for disability benefits. Petitioners assert their petition states a cause of action because, citing section 3287(a), their right to retirement benefits vested on a particular day and the damages are in an amount certain. LACERA contends that under the authority of *AFL-CIO*, the retroactive lump-sum payments are not "damages" assessed in a civil action, but are benefits to which the Board administratively determined petitioners were entitled. To clarify, we are not addressing the power of the *trial court* to award interest under section 3287(a) *in a mandamus action* brought to recover disability benefits *wrongfully denied by the Board*. That is settled law. (*AFL-CIO, supra*, 13 Cal.4th at pp. 1022, 1032.) Rather, we address the authority of *administrative agencies*, such as the Board here, to award interest on benefits which have *not been denied*, but which represent the period before the Board made the eligibility determination, and which are designed to bring the disbursements current.

A. *The AFL-CIO decision is predicated on section 3287(a) and the Unemployment Insurance Code.*

The Supreme Court addressed this issue in *AFL-CIO* in the context of the Unemployment Insurance Code. There, the claimant sought to backdate her unemployment insurance claim to obtain benefits for an earlier period. The Employment Development Department (EDD) denied her request. Through an administrative appeal, the claimant established her entitlement to retroactive benefits for the 10-week period between the initial denial of eligibility and the later benefit award. The claimant then sought interest on that 10-week retroactive payment. (*AFL-CIO, supra*, 13 Cal.4th at p. 1028.) The Board denied the claimant's request on the ground neither it, nor an administrative law judge acting on its behalf, has the legal authority to award prejudgment interest under section 3287(a). The AFL-CIO, as an "interested party," filed a complaint for declaratory relief in the trial court challenging the Board's decision.

A majority of the Supreme Court reversed the court of appeal's decision that the administrative law judge could award prejudgment interest under

section 3287(a) on retroactive benefit payments. ■ In reaching its decision, the *AFL-CIO* court established at the outset "the settled principle" that ". . . administrative agencies have only the powers conferred on them, either expressly or by implication, by Constitution or statute . . ." and "must act within the powers conferred upon [them] by law and may not act in excess of those powers. . . ." (13 Cal.4th at p. 1042.) Thus administrative law judges may not award interest "where the enabling statute does not authorize an award of interest." (*Id.*, at p. 1023.) Analyzing the Unemployment Insurance Code and section 3287(a), the Supreme Court held that neither "authorizes the Board, or administrative law judges acting on behalf of the EDD, to award interest . . . on the Board's administrative eligibility determination that retroactive unemployment insurance benefits are due . . . ." (*AFL-CIO, supra,* 13 Cal.4th at pp. 1022-1023.)

In reaching this conclusion, the *AFL-CIO* court first observed section 3287(a) allows trial courts, as opposed to administrative law judges, to award prejudgment interest following a successful administrative mandamus action to recover wrongfully withheld benefits. (*AFL-CIO, supra,* 13 Cal.4th at pp. 1022, 1032; *Tripp* v. *Swoap* (1976) 17 Cal.3d 671, 682-683 [131 Cal.Rptr. 789, 552 P.2d 749], overruled on other grounds in *Frink* v. *Prod* (1982) 31 Cal.3d 166, 180 [181 Cal.Rptr. 893, 643 P.2d 476]; *Olson* v. *Cory* (1983) 35 Cal.3d 390, 402 [197 Cal.Rptr. 843, 673 P.2d 720]; *Goldfarb* v. *Civil Service Com.* (1990) 225 Cal.App.3d 633, 636 [275 Cal.Rptr. 284]; *Austin* v. *Board of Retirement, supra,* 209 Cal.App.3d at pp. 1532-1534.)[2] Prejudgment interest is awarded for the purpose of compensating for the delay caused by the necessity of instigating a mandamus action in the trial court to vindicate the claimant's right to wrongfully withheld benefits. (*AFL-CIO, supra,* at p. 1034.)

Next, the *AFL-CIO* Court reviewed the Unemployment Insurance Code's framework and concluded it limits the powers of administrative law judges to determining eligibility and computing benefits. (13 Cal.4th at p. 1039.) The statute's language contains no "express authority to award interest on an administrative benefit award." (*Id.*, at p. 1022.) Nor could the Supreme Court identify an implied power to award interest. (*Id.*, at p. 1023.) The Supreme Court explained its reading of the Unemployment Insurance Code thusly: "[T]he EDD has no underlying monetary obligation to the claimant until it determines the claimant is eligible for the benefits. [Citation.] Once eligibility has been determined, the right to receive benefits vests on the first

---

[2]In this regard, the *AFL-CIO* court specifically reversed and disapproved *Knight* v. *McMahon* (1994) 26 Cal.App.4th 747 [31 Cal.Rptr.2d 832], concluding the *Knight* court erred in awarding interest as an additional benefit where the Board had not wrongfully withheld benefits. (*AFL-CIO, supra,* 13 Cal.4th at p. 1023.)

day of the claimant's entitlement, and the EDD must promptly pay benefits due, regardless of any appeal taken. [Citation.]" (*Ibid.*) Nowhere is the power to award prejudgment interest implicit in the Unemployment Insurance Code.

Synthesizing section 3287(a) with the Unemployment Insurance Code, the Supreme Court explained the result. Entitlement to prejudgment interest can only occur when the Board makes its final decision that the claimant is *not* entitled to the benefits. That determination could constitute a " 'wrongful withholding' " of benefits giving rise to a delay in receiving the money. Only then would the claimant have grounds for filing a mandamus action under section 1094.5 of the Code of Civil Procedure to challenge the Board's decision where he or she can establish damages capable of being made certain under section 3287(a). (See *AFL-CIO, supra,* 13 Cal.4th at p. 1027.) Stated in the inverse, "[b]ecause there is no potential 'wrongful withholding' of benefits if the Board determines the claimant *is* eligible for unemployment insurance benefits, there can be no grounds for filing a mandamus action under Code of Civil Procedure section 1094.5 challenging the Board's favorable decision, and no damages 'capable of being made certain' that would give rise to even an implied obligation to award interest on the benefits recovered during the administrative process." (*Id.,* at p. 1023, italics added.) Therefore, the Unemployment Insurance Code does not implicitly or explicitly authorize the EDD or administrative law judges to award section 3287(a) prejudgment interest; only a court can award such interest. (*Ibid.*)

B. *The Government Code and LACERA's Bylaws.*

Clearly, section 3287(a) by itself does not authorize LACERA's Board to award interest. Hence, whether the Board has authority to award section 3287(a) interest on petitioners' retroactive benefit payments administratively awarded them depends on whether CERL implicitly or explicitly grants the Board such authority. We conclude CERL does not authorize the administrative award of prejudgment interest.

Turning to the Government Code and LACERA's bylaws, adopted pursuant to Government Code section 31525, a member of LACERA applies for service-connected disability retirement, inter alia, within four months of leaving work. (Gov. Code, § 31722.) According to Government Code section 31724, the Board decides whether the applicant is permanently incapacitated for the performance of duty. If the Board denies the member's request for disability retirement, the member is entitled to an administrative hearing before the Board, or before a referee appointed by the Board. (Gov. Code,

§ 31533; LACERA Bylaws, art. VIII; LACERA Disability Retirement Hearing Procedures, rule 28.)[3]

Government Code section 31724 governs the Board's duties and the timing of allowances. That provision states in relevant part, "If the proof received, including any medical examination, shows to the satisfaction of the board that the member is permanently incapacitated physically or mentally for the performance of his duties in the service, it *shall* retire him *effective* on the expiration date of any leave of absence *with compensation to which he shall become entitled* . . . . His disability retirement allowance *shall be effective as of the date such application is filed with the board*, but not earlier than the day following the last day for which he received regular compensation." (Italics added.) Government Code section 31727.4, which sets the amount of benefit allowances, also states, inter alia, "*Upon retirement* of any member for service-connected disability, *he shall receive an annual retirement allowance payable in monthly installments* . . . ." (Italics added.)

A review of CERL, together with LACERA's bylaws, reveals no explicit authorization, either during the application process or during the administrative appeal, to award section 3287(a) prejudgment interest administratively.

Nor do we discern an implicit power to grant prejudgment interest. Government Code sections 31724 and 31727.4 direct the Board to determine disability, i.e., eligibility, and to pay the benefits as of a specific date. The statute does no more and no less. The event which triggers retirement and the right to allowance payments is the disability determination by the Board. Until that time, the member is not retired, and LACERA has no monetary obligation to that member.

Once the member's eligibility for retirement is determined to the Board's satisfaction, CERL states the Board "shall" retire the member as of an earlier date certain. The statute then provides the "retirement allowance *shall be effective* as of the date . . . application [for benefits] is filed" with the Board. (Gov. Code, § 31724, italics added.) By using the word "shall," the statute mandates that the right to the allowance becomes effective immediately upon the retirement; that is, as soon as the Board's decision is made, retirement and the right to payments vest. The requirement that the right to a benefit allowance commences retroactively to the date of application assures that the member receives the full amount of his or her benefit coverage. In that sense, CERL is structured similarly to the Unemployment

---

[3]Anytime after filing the application for disability retirement, the member may also apply for a service retirement allowance pending determination of his entitlement to disability retirement. (Gov. Code, § 31725.7.)

Insurance Code because once disability is demonstrated to the Board's satisfaction, the member's right to receive benefits vests retroactively to the date the application was filed.

Petitioners argue that implicit authority to award section 3287(a) interest is contained in Government Code section 31724's requirement that the disability retirement allowance "shall be effective" as of a date which precedes the eligibility determination. Such requirement, petitioners reason, constitutes a "statutory mandate" that beneficiaries be compensated with interest.

There is no mandated interest implied in the requirement that payment of benefits be retroactive to an earlier "effective" date. Petitioners point us to no authority for this proposition. As LACERA points out, while the Legislature included the payment of interest in the worker's compensation context, it did not do so in CERL. Section 5800 of the Labor Code provides, "All awards of the appeals board either for the payment of compensation or for the payment of death benefits, *shall carry interest at the same rate as judgments in civil actions on all due and unpaid payments* from the date of the making and filing of said award." (Italics added.) In the case of CERL, had the Legislature intended to impose a requirement that interest be paid on retroactive portion of a retirement benefit, it knew how and could have done so in Government Code section 31724, just as it did in the context of worker's compensation. The Legislature chose not to and we will not infer an intent to award interest that is not even impliedly included.

Petitioners next argue "retroactive lump-sum payments of pension benefits constitute 'damages' under Civil Code section 3287(a)." For this proposition, petitioners cite *Olson* v. *Cory, supra,* 35 Cal.3d 390, *Goldfarb* v. *Civil Service Com., supra,* 225 Cal.App.3d 633, and *Austin* v. *Board of Retirement, supra,* 209 Cal.App.3d at page 1532. Petitioners misconstrue these cases. In each of these cases a *trial court in a mandamus action reversed an administrative decision wrongfully withholding benefits, and awarded* section 3287(a) interest. (*Olson, supra,* at p. 402 [withheld backpay and pension]; *Goldfarb, supra,* at p. 636 [wrongful demotion]; *Austin, supra,* at p. 1532[4] [withheld disability retirement benefits].) As explained in these cases and elucidated in *AFL-CIO*, prejudgment interest under section

---

[4]*Austin* v. *Board of Retirement, supra,* 209 Cal.App.3d at page 1533, involved the determination of whether an award of section 3287(a) interest was proper in *the context of a mandamus action to recover benefits wrongfully withheld by the Board* (209 Cal.App.3d at pp. 1532-1534), and so it does not inform our holding here. In *Austin,* we concluded the trial court should be allowed to award section 3287(a) " '. . . damages within the meaning of these provisions. [Citations.] Interest is recoverable on each salary or pension payment from the date it fell due. [Citation.]' [Citation.]" (209 Cal.App.3d at p. 1532.) We explained that there

3287(a) is designed to compensate for the lengthy delay resulting from the *mandamus action* made necessary to *vindicate* the claimant's rights following the Board's *wrongful denial of benefits*. (*AFL-CIO, supra,* 13 Cal.4th at pp. 1022, 1033-1034.) Petitioners here were *not denied* benefits and so they were not damaged. These cases are inapposite.

### C.   *The AFL-CIO decision is controlling.*

Petitioners' reliance on these cases merely begs the question finally decided in the negative in *AFL-CIO,* namely whether the Board, an administrative as opposed to a judicial body, had the statutory authority to award interest on retroactive lump-sum disbursements which were not wrongfully denied.[5] *AFL-CIO* explained the process: The EDD has no monetary obligation to the claimant until it decides the claimant is eligible for benefits. If eligibility is established, the right to receive benefits vests on the first day of the claimant's entitlement and the EDD must promptly pay benefits owed. If the EDD decides that the claimant is not entitled to benefits, that decision constitutes a "wrongful withholding" and a corresponding delay in receiving benefits, entitling the claimant to prejudgment interest. (*AFL-CIO, supra,* 13 Cal.4th at p. 1023.)

Following the logic of *AFL-CIO,* under section 31724, the Board's obligation to pay does not arise until the Board is "satisfied" that the member is "permanently incapacitated" for the "performance of his duties." (Gov. Code, § 31724.) At that point, the member is retired and his or her right to the benefits vests as of the date of application for those benefits. The Board must then make the lump-sum payment to bring payments current. That the payment is retroactive *does not mean that the Board wrongfully denied benefits for that period.* (See *AFL-CIO, supra,* 13 Cal.4th at p. 1026.) Rather the retroactive allotment covers the period between application and the determination the member is in fact eligible. Only if the Board had denied petitioners their benefits, forcing petitioners to bring an administrative mandamus action to vindicate their rights to benefits, would petitioners be able to establish their entitlement to prejudgment interest. Petitioners here are not entitled to interest under section 3287(a), exactly because (1) they were not denied benefits, (2) they did not file an administrative mandamus action in

is nothing in the statutory scheme governing disability pension benefit suggesting a legislative intent to preclude recovery of interest on damages awarded as prejudgment interest from the date such benefits became due. We noted, "If Austin had not been wrongfully denied disability retirement benefits, he would have obtained the benefits of the moneys paid as of the date of accrual of each payment." (*Id.,* at p. 1534.)

[5]Until *AFL-CIO,* the Supreme Court had declined to address whether such interest was obtainable in the administrative process. (*Tripp* v. *Swoap, supra,* 17 Cal.3d at p. 685, fn. 14.)

the trial court in an effort to overturn a wrongful benefits-decision by the Board, and (3) under CERL, although there exists a waiting period between application and eligibility determination, there is no gap in time between the eligibility decision and the date the money statutorily becomes due. The statute provides that once the eligibility determination is made, the right to benefits vests immediately, effective retroactively.

Petitioners contend *AFL-CIO* is inapplicable because unlike unemployment insurance where no interest accrues until the administrative procedure is completed and the eligibility is established, a pension plan is a vested contractual right which accrues upon acceptance of employment. Because the pension plan is vested, petitioners argue, they are not mere "claimants" so much as beneficiaries of a trust and the Board is not only an administrative agency, but also a fiduciary. Further, petitioners argue, because the pension is vested, it ". . . actually constitute[s] funds earned by [petitioners] and other members of LACERA, in which they have vested rights, subject only to determination of eligibility."

There is no denying LACERA, as trustee administering the retirement benefits, is a fiduciary who must administer the trust in good faith and deal fairly with the members. (*Hittle* v. *Santa Barbara County Employees Retirement Assn.* (1985) 39 Cal.3d 374, 392 [216 Cal.Rptr. 733, 703 P.2d 73].) However, as petitioners themselves have stated it, their right to the benefits is "*subject only to determination of eligibility.*" (Italics added.) Toward that end, the member seeking such benefits must apply (Gov. Code, § 31722), and carries the burden (*Rau* v. *Sacramento County Ret. Bd.* (1966) 247 Cal.App.2d 234, 238 [55 Cal.Rptr. 296]) of demonstrating, to the Board's satisfaction (Gov. Code, § 31724), his or her eligibility for the benefits. (*Ibid.*) Until the member makes the necessary showing of eligibility, his or her right is merely inchoate. As soon as the Board is satisfied by the showing, the right to the benefit vests automatically, retroactive to the date the member applied for benefits. Where the Board or administrative law judge rules in favor of the member, there is no *withholding* of benefits such as would justify judicial action giving rise to "damages."

Petitioners next claim that the delay in determining eligibility under CERL is not comparable to the "inconsequential delay" the *AFL-CIO* court observed under the Unemployment Insurance Code. Petitioners focus on the *AFL-CIO* court's analysis of the structure of the Unemployment Insurance Code, and conclusion "[o]nce eligibility has been determined, the right to receive benefits vests on the first day of the claimant's entitlement, and the EDD must *promptly pay* benefits due, regardless of any appeal taken. [Citation.]" (*AFL-CIO, supra,* 13 Cal.4th at p. 1023, italics added.) By

contrast, petitioners explain, CERL's statutory structure contains no "prompt" payment requirement and thus no sufficient incentive to make the eligibility determination expeditiously.

We disagree with petitioners' analysis. A fair reading of CERL demonstrates it actually protects members by assuring the employee receives benefits for the entire period of eligibility, not just commencing as of the eligibility determination. Such statutory structure allows the Board to assure itself of the member's eligibility, while seeing that the member is paid for the entire period of disability. Pending determination of entitlement, the member may always apply for an allowance under Government Code section 31725.7, as Garnica did, to avoid penury while awaiting the eligibility determination.

We recognize the system under CERL is unreasonably lengthy and onerous. Weber waited 59 months for her allowance and Garnica waited 43 months (although she did receive nonservice connected payments in the interim). Nonetheless, the procedural delay does not constitute a wrongful denial of benefits (*AFL-CIO, supra*, 13 Cal.4th at p. 1026), and cannot be read as implicit authority to grant prejudgment interest. Under section 3287(a) any change in the statutory framework must be done by the Legislature, not by judicial fiat. We suggest strongly that it is time for the Legislature to consider the burden on a member imposed by the lengthy process to determine eligibility.

CONCLUSION

To summarize, therefore, section 3287(a) does not authorize administrative award of prejudgment interest. It is settled law that administrative agencies, such as LACERA's Board, must have statutory power to award such interest. Just as the Unemployment Insurance Code provisions limit the powers of administrative law judges to determining eligibility and computing benefits (*AFL-CIO, supra,* 13 Cal.4th at p. 1039), so too, CERL, Government Code section 31724, restricts the duties of the referee and Board to determining to their satisfaction the member's permanent incapacity and paying disability benefits. The amount of the benefit allowance and the date payments commence are established by statute. Nowhere does Government Code section 31724 confer upon the Board the express or implied power to award prejudgment interest in a proceeding when it determines the claimant is in fact eligible for service-connected disability benefits. Under

the authority of *AFL-CIO,* the trial court here properly granted LACERA's motion for judgment on the pleadings.*

### DISPOSITION

The judgment is affirmed. Costs are awarded to Respondent.

Klein, P. J., and Croskey, J., concurred.

Appellants' petition for review by the Supreme Court was denied July 8, 1998. Kennard, J., was of the opinion that the petition should be granted.

---

*See footnote, *ante*, page 1440.